STATE of Utah, Plaintiff and Respondent,

v.

Cecil Earl BROOKS and James Charles Edward Good, Defendants and Appellants.

No. 16639.

Supreme Court of Utah.

Nov. 18, 1981.

**538**

Glenn K. Iwasaki, Suzan Pixton, Jo Carol Nesset-Sale, Salt Lake City, for defendants and appellants.

David L. Wilkinson, Robert N. Parrish, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

This is an appeal by defendants Cecil Earl Brooks and James Charles Edward Good from a jury conviction of aggravated assault. The victims were not present at the trial and defendants were found guilty principally upon the testimony of the victims which had been recorded at the preliminary hearing. Other corroborative evidence was adduced at the trial.

Defendants raise three issues: (1) whether the admission at the trial of the taped preliminary hearing testimony violated defendants' right to confrontation of witnesses afforded by the U. S. and the Utah Constitutions; (2) whether the trial judge's refusal to give a specific cautionary instruction regarding absent witnesses was an abuse of discretion; and (3) whether the evidence was sufficient to support the verdict of the jury.

The defendants and victims were four transients who had recently joined together to ride the rails but were camped at Roper Yards in the "hobo jungle" when the offense occurred. One of the victims, Donald Storie, testified at the preliminary hearing that a dispute over $14 had developed resulting in the victims and defendants splitting up. Defendants left the campsite but returned. Upon returning, Brooks came at Storie with a knife saying, "I didn't steal the $14," and stabbed Storie in the chest. Storie claimed that as he struggled with Brooks, Good hit Storie with an ax handle. He was knocked unconscious but awoke to find Richard Vinson, the other victim, "bleeding real bad." Although his memory was somewhat unclear, Vinson also testified at the preliminary hearing.

Vinson remembered the four had eaten dinner and had drunk wine, but he had then fallen asleep and did not recall the dispute over the money or the decision of the men to split up. He did remember waking up when it was dark and seeing a man standing over him. Vinson said he was hit suddenly before he could arise. Both victims were treated for the injuries they sustained.

Counsel for defendants cross-examined both victims at the preliminary hearing. The victims left the county before the trial took place and could not be located although a police officer made attempts to find them. The preliminary hearing testimony was introduced at trial, over objection of defense counsel. The court did, however, edit the tapes to delete certain objectionable statements. Although it was discussed, no separate hearing on the question of reliability was held; and no cautionary instruction with respect to the weight to be given

by the jury to the preliminary hearing testimony was given at trial even though defendants requested one.

At the trial, additional testimony was received. A trainyard supervisor and a carman, members of a group of employees at Roper Yards who were the first to encounter the defendants after the fight, testified. The remainder of testimony in the prosecution's case consisted of testimony by doctors, police officers and the custodians of court recordings of the victims' testimony taken at the preliminary hearing.

Both defendants took the stand in their own defense at trial. Good claimed that Storie brought out the knife when Good attempted to take tobacco and leave camp as Vinson had directed him to do. At that point Good took two swings with an ax handle at Storie. When Storie fell back, Good turned and hit Vinson with a club to get him off Brooks.

Brooks' testimony at trial corroborated an argument over the money and Good's attempt to take the tobacco as well as Vinson being involved in the fight. However, Brooks said that Storie came at Brooks with a knife and turned toward Good whereupon Vinson came at Brooks. They scuffled until Good pulled Vinson off. Then Brooks and Good left the scene.

## I.

Defendants' right to confrontation is guaranteed by the Utah Constitution, Article I, Section 12, and by the Sixth Amendment to the United States Constitution.

In the context of federal constitutional law, the court in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), (hereinafter Roberts) outlined a two-pronged test to determine the admission of prior testimony in relationship to confrontation considerations. The first requirement is that the witness must be unavailable; the second requirement is that the testimony must bear sufficient indicia of reliability to permit its introduction at trial. *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970);

*Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 88 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). See also *State v. Mannion*, 19 Utah 505, 57 P. 542 (1899).

A state may construe its own constitution more narrowly than the federal constitution even though the provisions involved may be similar. Nonetheless, the two-pronged test in *Roberts* appears to be a correct and reasonable standard to this Court.

In *State v. Oniskor*, 29 Utah 2d 395, 510 P.2d 929 (1973), we held that the testimony of an unavailable witness given at the preliminary hearing could be used at trial provided prosecutorial authorities have made a good faith effort to obtain his presence at trial. The rule of review enunciated in *Gallegos v. Turner*, Utah, 526 P.2d 1128 (1974), is that we will not reverse the ruling of the trial judge that the efforts were made in good faith in the absence of a showing of clear abuse of discretion.

In the case at bar, the trial judge heard testimony from an officer who had made various attempts to locate the victims after they had left the county. They had assured the prosecution that they would appear at trial. Defendants argue that other and earlier attempts could have been made to look for them citing a number of cases from other jurisdictions which are not directly on point. See *Fresneda v. State*, Alaska, 483 P.2d 1011 (1971), where a procedure was available to get a witness from the army to testify; *People v. Horn*, 225 Cal.App.2d 1, 36 Cal.Rptr. 898 (1964), where the time lapse was held to be one of the factors to consider; *People v. Starr*, 89 Mich.App. 342, 280 N.W.2d 519 (1979), where other specific available leads were not checked; *People v. McIntosh*, 389 Mich. 82, 204 N.W.2d 135 (1973), where the most specific lead that the witness was in prison was not checked; *Flores v. People*, 196 Colo. 565, 593 P.2d 316 (1978), where the likelihood of death or incapacity by the time of trial was known

at the time the testimony was taken; *People v. Forgason*, 99 Cal.App.3d 356, 361, 160 Cal.Rptr. 263 (1979), where the value of a subpoena issued for a known-to-be-unavailable witness was held worthless.

In the instant case, the officer testified as to his attempts to locate the victims including a time lag before he began searching for them and lack of subpoena served upon them. He contacted all known relatives, likely hangouts, the local bus terminals and out of state police. The trial judge determined a good faith effort had been made. Although in retrospect other efforts might have been made, the determination does not appear to us to be an abuse of discretion.

We have not previously ruled what constitutes sufficient indicia of reliability. At the outset, we recognize that to be able to fairly evaluate the truth of a prior statement, the trier of fact must be assured that certain safeguards were followed to protect against the unreliability of the statement. In *Barber v. Page*, supra, a case where the key witness was in jail available for trial through certain procedures, the court held that confrontation in a preliminary hearing cannot fully compensate for the absence of confrontation at trial. There the court observed, *Id.* 390 U.S. at 725–726, 88 S.Ct. at 1322, that a less searching exploration into the merits of the case occurred at a preliminary hearing than at trial, but recognized that "there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable." Referring to *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the U. S. Supreme Court observed in the later *Roberts* case, supra, that there are "guarantees of trustworthiness in the accoutrements of the preliminary hearing itself," 448 U.S. 56 at 73, 100 S.Ct. 2531 at 2542, 65 L.Ed.2d 597 at 612, and permitted the testimony of an unavailable witness taken at preliminary hearing to be admitted at trial.

In *State v. Anderson*, Utah, 612 P.2d 778, 786 (1980), a case which held the submission of an affidavit in lieu of the presence of a witness in a preliminary hearing to be harmless error, this Court recognized that a preliminary hearing is "not to be considered a full trial on the merits." At the same time we noted:

> . . . the adversarial qualities of the examination [in a preliminary hearing] allow the defendant an opportunity to attack the prosecution's evidence and to present any affirmative defenses. Although the hearing is not a trial per se, it is not an ex parte proceeding nor one-sided determination of probable cause, and the accused is granted a statutory right to cross-examine the witness against him, and the right to subpoena and present witnesses in his defense. *Id.* at 783.

The fact that similar procedural protections are available in a preliminary hearing and the same rights are at stake is significant. We agree with the *Roberts* decision, supra, that a preliminary hearing by its very nature bears certain indicia of reliability which are usually sufficient to assure adequate protection of defendants' rights to confrontation.

Therefore, it was not necessary that the trial court hold a hearing on the reliability of the testimony as contended for by the defendants. They base their argument on a statement made by Justice Harlan in a concurring opinion in *California v. Green*, supra, 399 U.S. at 186, Note 20, 90 S.Ct. at 1949, Note 20, where he said:

> It will, of course, be the unusual situation where the prosecution's entire case is built upon hearsay testimony of an unavailable witness. In such circumstances the defendant would be entitled to a hearing on the reliability of the testimony.

While it is true that the main evidence against the defendants was the hearsay testimony of the victims, no useful purpose would have been served in this instance in holding a hearing on reliability since the testimony was given at a preliminary hearing in this action with all its formalities and

protections. Furthermore, the trial judge heard motions of defense counsel out of the presence of the jury to strike certain objectionable statements of the testimony of the victims before it was entered into the trial record. This commendable procedure also protected the rights of the defendants.

Defendants ask this Court to hold, as a matter of law, however, that by a narrow reading of Rule 63(3)(b)(ii) of Utah Rules of Evidence, testimony taken at preliminary hearing is inadmissible at trial. The rule in pertinent part reads:

Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except: . . .

(3) Subject to the same limitations and objections as though the declarant were testifying in person and in the case of depositions: . . .

(b) if the judge finds that the declarant is unavailable as a witness at the hearing, testimony given as a witness in another action or in a deposition taken in compliance with law in another action, when . . .

(ii) the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered.

Defendants argue that by its very nature a preliminary hearing is different in motive and interest than a trial. They rely primarily upon *People v. Smith*, 198 Colo. 120, 597 P.2d 204 (1979), where the Colorado Supreme Court held that because of the limited scope of a preliminary hearing the state constitution precluded the admission of a preliminary hearing transcript at a subsequent trial.

Defendants' arguments here are similar to those made in the Colorado case: The preliminary hearing is limited to a determination of probable cause as a screening device. The prosecution does not bear the burden of proving the crime "beyond a reasonable doubt" as in a trial. The evidentia-ry and procedural rules are relaxed. The credibility of the witnesses is usually not explored. Defense counsel does not have the same motive and interest to cross-examine at preliminary hearing as he does at trial.

■ The contrary is true. Defense counsel's motive and interest are the same in either setting; he acts in both situations in the interest of and motivated by establishing the innocence of his client. Therefore, cross-examination takes place at preliminary hearing and at trial under the same motive and interest. Consequently, we hold that Rule 63(3)(b)(ii), Utah Rules of Evidence, does not preclude, as a matter of law, testimony given in a preliminary hearing from being admitted at trial.

■ Defendants next contend that certain omissions in cross-examination at preliminary hearing precluded them from an adequate exercise of the right to confrontation. At preliminary hearing defense counsel were unaware of some statements made to police officers by the victims since that information was unavailable under Utah's discovery rules. While it is true that they were deprived of the opportunity to cross-examine the victims concerning the statements, counsel do not claim there was any prohibition on them from presenting to the jury the inconsistency between the statements which were made to police officers and the victims' testimony at preliminary hearing.

Counsel also complain that they did not explore the victims' history of alcohol abuse or propensity for violent behavior at the preliminary hearing. They do not claim that they did not know of this history and propensity at that time, nor do they claim that they were in any way prohibited from attacking the credibility of the witnesses at preliminary hearing.

In *People v. Garcia*, 65 Ill.App.3d 13, 21 Ill.Dec. 952, 382 N.E.2d 316 (1978), a case cited by defendants, the court held that the lack of further cross-examination was not a denial of confrontation if further cross-examination would be of no benefit to the

defendants. While a lawyer in retrospect may often think of subjects he might have delved into more extensively, we find no error here. Defense counsel conducted extensive cross-examination generating sixty-five pages of cross-examination in the record of the preliminary hearing. They apparently advisedly and intentionally decided to refrain from questioning concerning the victims' alcohol history and propensity for violence. In view of these facts, we hold that defendants' opportunity for cross-examination was adequate.

, If there had been no cross-examination or a superficial or perfunctory cross-examination, we would have a different case not covered by this ruling. If that distinction should persuade defense counsel to waive or abbreviate cross-examination at preliminary hearing to attempt to forestall the prosecution from using at trial the preliminary hearing testimony of a witness who may be unavailable at that time, the prosecution should use the provisions of Rule 7(f) of the Utah Rules of Criminal Procedure, § 77–35–7(f), to preserve their witnesses' testimony in a more formal and adversary manner than by the preliminary hearing. Testimony preserved by that procedure is expressly declared to be admissible at the subsequent trial in lieu of the personal testimony of the witness.

In summary on the issue of defendants' right to confrontation, we hold that the Utah Constitutional provision, Article I, Section 12, should be construed the same as the Federal Constitutional provision, that the Utah Rule of Evidence, § 63(3)(b)(ii) does not as a matter of law preclude the admission of preliminary hearing testimony from being introduced at trial, nor deny a constitutionally guaranteed right to confrontation. We further hold that defendants had and took an adequate opportunity for cross-examination at the preliminary hearing and that their right to confrontation was not violated.

## II.

The second issue raised by defendants is whether in view of the facts of this case a cautionary instruction as to the weight to be given to the taped testimony (by the jury) should have been given. The defendants again rely upon a concurring opinion in *California v. Green*, supra, 399 U.S. at 186, Note 20, 90 S.Ct. at 1949, Note 20, wherein Justice Harlan said:

Due process also requires that the defense be given ample opportunity to alert the jury to the pitfalls of accepting hearsay at face value, and the defendant would, of course, upon request be entitled to cautionary instructions [cf. § 6.17, Manual on Jury Instructions, 33 F.R.D. 601 (Missing Witness).]

■ In a case such as the one before us, where a number of unusual factors may work to influence the weight of the taped testimony, a cautionary instruction is advisable. Here, there was no cross-examination before the jury and the demeanor of the victims was unobservable.

■ However, the law in Utah is that jury instructions are to be considered as a whole. *State v. Coffey*, Utah 564 P.2d 777 (1977); *State v. Criscola*, 21 Utah 2d 272, 444 P.2d 517 (1968); *State v. Burch*, 17 Utah 2d 418, 413 P.2d 805 (1966). When taken as a whole if they fairly tender the case to the jury, the fact that one or more of the instructions, standing alone, are not as full or accurate as they might have been is not reversible error. *State v. Reiner*, Montana, 587 P.2d 950 (1978).

■ In this case, the preliminary instructions to the jurors clearly informed them of their duty to evaluate the evidence independently. The final instructions adequately explained the rules to be followed by the jury in weighing the evidence. The reasonable doubt standard of proof was discussed completely. The instructions stressed the necessity for each juror independently and impartially to weigh all of the testimony, regardless of the source. We find the preliminary and final instructions, taken together, sufficiently conveyed to the jury the need for careful examination and comparison of all the evidence given.

Furthermore, Justice Harlan's recommendation that a cautionary instruction be given depends upon whether defense was accorded ample opportunity to alert the jury to the pitfalls of accepting the hearsay. Although the cautionary instruction which specifically concerned the absence of witnesses was not given, repeated references (made by defense counsel) to this absence certainly alerted the jury to the potential dangers of substituting taped preliminary testimony for live trial witnesses. Counsel zealously argued the absence of the witnesses, even to the extent of graphically characterizing the taped testimony as testimony from "an empty chair." The instructions, taken as a whole, then, made clear to the jury the need for cautious evaluation of the preliminary hearing testimony and allowed the vigorous argument by counsel.

Accordingly, it does not appear to have been an abuse of discretion for the trial court to have refused a specific cautionary instruction in this case. We therefore find no reversible error on this point.

### III.

The third issue raised by defendants is whether the evidence was sufficient to support the verdict of the jury. When the evidence is so lacking and insubstantial that reasonable men could not possibly have reached a verdict of conviction beyond a reasonable doubt, this Court reverses the verdict because of insufficiency of the evidence. *State v. Lamm*, Utah, 606 P.2d 229 (1980). Where the defendants' account merely differs from the prosecution's, this Court must assume that the jury believed the version which supports their verdict. *State v. Reddish*, Utah, 550 P.2d 728 (1976).

There were two differing accounts in the case before us. In addition to the taped testimony, the prosecution presented twelve witnesses at trial, including other persons present in the area at the time of the crime, and medical testimony. The defendants' account of what happened differed from the prosecution's. The prosecution's account does not appear to be so lacking and insubstantial that the jury must necessarily have entertained a reasonable doubt that defendants committed the crime.

Judgment affirmed.

HALL, C. J., and STEWART and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.